1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

RANDEL LANE,

          Plaintiff(s),

v.

CLARK COUNTY, et al.,

          Defendant(s).

2:11-CV-485 JCM (NJK)

**ORDER**

Presently before the court is defendant Clark County's motion for summary judgment renewed.  (Doc. # 34).  Plaintiff filed a response in opposition (doc. # 35)[1], and defendant filed a reply (doc. #36).

Also before the court is plaintiff's motion to amend/correct response to motion.  (Doc. # 38).  Defendant filed a response in opposition (doc. # 39), and plaintiff has not filed a reply.

**I.     Background**

Plaintiff began working for defendant as a cook assigned to the Spring Mountain Youth Camp in October 2003.  (Doc. # 34, Ex. B at p. 26).  His cook position was a salary schedule 24.  (*Id.*, Ex. B at p. 26-27).  Plaintiff left that position and became a senior storekeeper, also a salary schedule 24 position, at the Clark County Department of Juvenile Justice Services ("JSS") warehouse in August 2005.  (*Id.*, Ex. B at p. 27).

---

[1] Plaintiff's response in opposition refers the court back to his previously filed response in opposition of defendant's summary judgment (doc. # 31).

James C. Mahan
U.S. District Judge

1    Plaintiff first sought medical attention for a panic attack in 2004.  (*Id.*, Ex. B at p. 29-30).

2    Plaintiff has since been diagnosed with severe anxiety, social anxiety disorder, major depression, and

3    panic attacks.  (*Id.*, Ex. B at p. 21).

4    Due to plaintiff's medical issues, he was permitted to take Family and Medical Leave Act

5    ("FMLA") leave from September 8, 2008, through December 8, 2008.  Plaintiff received a release

6    from his physician on December 15, 2008, restricting him from working in the JJS warehouse.  (*Id.*,

7    Ex. H).  Plaintiff received a full duty release from his physician on December 22, 2008.  (*Id.*, Ex. I).

8    Plaintiff's treating physician stated that plaintiff could not return to work before May 21, 2009.  (*Id.*,

9    Ex. N).[2]

10    Plaintiff notified defendant that he was not able to work at the JJS warehouse and his doctor

11    suggested work at a different location with the same salary schedule.  (*Id.*, Ex. P).  Defendant

12    informed plaintiff shortly thereafter that it had no alternative work location and that he must return

13    to work by May 13, 2009, or be subject to progressive discipline for unauthorized leave.  (*Id.*, Ex.

14    Q).

15    On May 13, 2009, plaintiff sought treatment at University Medical Center for a panic attack.

16    (*Id.*, Ex. S).  Defendant learned that plaintiff could not return to work for at least an additional one

17    to three weeks due to his medical state.  (*Id.*, Ex. T).  Defendant informed plaintiff that he would

18    exhaust his FMLA leave on July 1, 2009.  (*Id.*, Ex. W).  Defendant further informed plaintiff that

19    he would be placed on unauthorized leave without pay effective July 2, 2009.  (*Id.*, Ex. W).

20    By July 9, 2009, defendant was notified that plaintiff required a leave of absence for an

21    additional four to six weeks due to his medical conditions.  (*Id.*, Ex. M).  In early August 2009,

22    defendant received another medical note that plaintiff would be incapacitated for two to six weeks

23    and unable to work due to his medical issues.  (*Id.*, Ex. DD).  This same medical note stated that

24    plaintiff, due to his conditions, would need two to six weeks leave as much as two to three times per

25    year.  (*Id.*, Ex. DD).

26

27    [2] A separate note by the same treating physician indicated a potential return to work date of
28    May 12, 2009.

James C. Mahan
U.S. District Judge

1       Defendant notified plaintiff that he was a candidate for medical separation because he was

2   not a qualified individual with a disability since he could not perform the essential functions of his

3   job with or without an accommodation. (*Id.*, Ex. Y).  On October 5, 2009, plaintiff was medically

4   separated. (*Id.*, Ex. B).  Plaintiff had not worked since his separation in October 2009, through the

5   date of his deposition. (*Id.*, Ex. B).[3]

6       On or around December 16, 2008, defendant notified plaintiff of a vacant position in another

7   department within its organization in response to plaintiff's request to voluntary transfer. (*Id.*, Ex.

8   J).  Defendant, on several occasions, requested that plaintiff have his treating physicians complete

9   medical certifications or an "Essential Function Analysis. (*Id.*, Exs. E and G).  The purpose of

10   having physicians complete these forms was so that defendant could determine which, if any,

11   reasonable accommodations it could provide to plaintiff as part of an ADA assessment. (*Id.*).

12       Defendant requested this information starting in October 2008. (*Id.*).  Plaintiff did not

13   provide medical certifications with "reasonable accommodations" until June and July 2009. (Doc.

14   # 31, Exs. 4-5).   The "reasonable accommodations" were provided by two different

15   doctors/physicians and the proposed accommodations were: (1) defendant provide plaintiff a "life

16   coach"; (2) defendant provide plaintiff a "mentor" to assist plaintiff with his struggles; and (3) that

17   defendant permit plaintiff to stop working "completely" for an indefinite period of time if plaintiff

18   ever suffered a panic attack. (*Id.*).

19       Finally, plaintiff did not attend his medical separation pre-termination hearing on October

20   2, 2009. (*Id.*, Ex. GG).  At this hearing, plaintiff would have had the opportunity to present evidence

21   that he was able to work with accommodations or present a release to return to work. (*Id.*, Ex. GG).[4]

22   . . .

23

24       [3] Plaintiff's current employment status is unknown.  Additionally, from the time of his

25   separation up through his deposition, plaintiff has been collecting federal disability payments.

26       [4] The court relied heavily on defendant's undisputed facts section in its motion.  Plaintiff does

27   not contest defendant's undisputed facts.  Further, to lay out the factual scenario, plaintiff's counsel appears to have just copied and pasted his client's answers to interrogatories.  Plaintiff's counsel did

28   not distill or organize the interrogatory answers in any meaningful way.

James C. Mahan
U.S. District Judge

1    Plaintiff timely received a right to sue letter from the EEOC. Plaintiff filed the instant action

2    alleging violations of the Americans with Disabilities Act, negligent supervision, intentional

3    infliction of emotional distress, and wrongful termination. This court previously denied defendant's

4    motion for summary judgment without prejudice. (Doc. # 33). The court previously denied the

5    motion because defendant's exhibits were not properly authenticated pursuant to *Orr v. Bank of*

6    *America*, 285 F.3d 764 (9th Cir. 2002) (articulating the standard for authentication of evidence on

7    a motion for summary judgment). Defendant has renewed its summary judgment motion with

8    properly authenticated evidence.

9    **II.    Legal Standard**

10    The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,

11    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

12    show that "there is no genuine issue as to any material fact and that the movant is entitled to a

13    judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is

14    "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317,

15    323–24 (1986).

16    In determining summary judgment, a court applies a burden-shifting analysis. "When the

17    party moving for summary judgment would bear the burden of proof at trial, it must come forward

18    with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

19    In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

20    of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

21    F.3d 474, 480 (9th Cir. 2000) (citations omitted).

22    In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

23    moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

24    element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

25    make a showing sufficient to establish an element essential to that party's case on which that party

26    will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party

27    fails to meet its initial burden, summary judgment must be denied and the court need not consider

28

James C. Mahan
U.S. District Judge

- 4 -

the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.   Discussion**

As a preliminary matter, plaintiff has sought to include a supplemental statement to his opposition to defendant's summary judgment motion. (Doc. # 38). The supplement is an affidavit of plaintiff Randal Lane that contains additional factual assertions. (*See* doc. # 38, Exs. 1-3). The motion seeking leave to include the supplemental statement asks the court for leave to file the additional affidavit, but does not state which facts in the affidavit are important. (*See* doc. # 38). In fact, the motion does not make any comments about the "new" facts in the additional affidavit. (*See id.*).

1    The motion does not state which facts in the three exhibits are salient to resolution of the

2    summary judgment, state which facts rebut any material factual assertions by defendant, or even

3    summarize why the facts in the supplements ultimately matter.  Further, the court does not even have

4    to consider the supplements because they are unauthenticated and because the court does not have

5    to hunt through the affidavits to determine which facts matter.  *See Greenwood v. F.A.A.*, 28 F.3d

6    971, 977 (9th Cir. 1994) ("Judges are not like pigs, hunting for truffles buried in briefs.").

7    Defendants opposed the supplements.  The court has reviewed them and they have become

8    part of the courts consideration.  They do not change the ultimate outcome.

9    *A.     Violations of the Americans with Disabilities Act*

10   The Americans with Disabilities Act (ADA) makes it unlawful for a qualified employer to

11   "discriminate against a qualified individual on the basis of disability in regard to job application

12   procedures, the hiring, advancement, or discharge of employees, employee compensation, job

13   training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  "In

14   order to prevail on an employment termination claim under the ADA, a plaintiff must establish: (1)

15   that he is a disabled person within the meaning of the ADA; (2) that he is qualified, that is, with or

16   without reasonable accommodation (which he must describe), he is able to perform the essential

17   functions of the job; and (3) that the employer terminated him because of his disability."  *Kennedy

18   v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996).

19   Both sides agree that plaintiff is a disabled person within the meaning of the ADA.  (Doc.

20   # 34, p. 12; doc. # 41, p. 9).

21   I.     Qualified under the ADA

22   "A plaintiff bears the burden of demonstrating that [he] can perform the essential functions

23   of [his] job with or without reasonable accommodation."  *Kennedy*, 90 F.3d at 1481 (citing *Lucero

24   v. Hart*, 915 F.2d 1367, 1371 (9th Cir. 1990).  The determination of whether an individual is

25   "qualified" should be made in two steps.  *Hirschhorn v. Sizzler Restaurants Int'l, Inc.*, 913 F.Supp.

26   1393, 1399 (D. Nev. 1995); *see* 29 C.F.R. § 1630.2(m); *Garcia-Ayala v. Lederle Parenterals, Inc.*,

27   212 F.3d 638, 645 (1st Cir. 2000).

28

**James C. Mahan**
**U.S. District Judge**

1  The first step is to determine if the individual satisfies the prerequisites for the position, such

2  as possessing the appropriate employment experience.  *Hirschhorn*, 913 F.Supp. at 1399; *see* 29

3  C.F.R. § 1630.2(m); *Garcia-Ayala*, 212 F.3d at 645.  Defendant concedes that plaintiff satisfies the

4  first step.

5  The second step requires plaintiff be "able to perform the essential functions of the position

6  with or without reasonable accommodation."  *Garcia-Ayala*, 212 F.3d at 645.  Essential functions

7  are the fundamental job duties of the employment position, *see* 29 C.F.R. § 1630.2(n)(1), and the

8  ADA requires the court to consider the employer's judgment as to what functions of a job are

9  essential.  *See* 42 U.S.C. § 12111(8).

10  Defendant argues that plaintiff was not a qualified individual under the ADA because

11  plaintiff could not perform the essential functions of the storekeeper position, plaintiff could not

12  regularly attend work, and plaintiff's condition prevented him from performing the essential

13  functions of his job.  Plaintiff fails to argue particular reasons why he was a qualified individual or

14  why he could perform the essential functions of his job.  Conspicuously, plaintiff does not counter

15  defendant's arguments about absenteeism.

16  Plaintiff's position with defendant was a senior storekeeper.  The position's essential

17  functions, as provided by defendant, include such tasks as: providing lead direction, training, and

18  work review to the store keeping staff; organize and assign work; set priorities; unpack materials,

19  supplies, tools, and equipment; verifying articles received against purchase order; store items on

20  selves; packing items as necessary for delivery to off-site departmental locations; maintaining storage

21  areas in clean and orderly conditions; and contributing to the units' service to its customers by

22  directing or participating as an active member of the work team.[5]  (Doc. # 34, p. 14).

23  The record demonstrates that plaintiff's anxiety, depression and stress issues prevented him

24  from completing these essential tasks.  Plaintiff's medical certification from Dr. Collins, a treating

25  physician, reported that plaintiff could not "juggle multiple assignments" or "withstand teasing,

26

27  _____

[5] Plaintiff does not dispute these were the essential functions of his position or make any
28  comment whatsoever regarding what were the essential functions of his former job.

James C. Mahan
U.S. District Judge

- 7 -

hearsay and provoked reaction by peers." (Doc. # 24, Ex. M).  A person employed as a senior storekeeper with the essential functions listed by defendant needed to be able to "juggle multiple assignments" and be able to "withstand teasing, hearsay and provoked reaction by peers."

Further, plaintiff's disorders affected his ability to speak, think clearly, interact with others, learn, perform analytical tasks, and concentrate. (*Id.*).  A senior storekeeper also needed to possess the ability to speak, think clearly, interact with others, learn, perform analytical tasks, and concentrate. A separate physician stated that plaintiff was subject to relapse at any time from stress. Plaintiff was incapable of performing the essential tasks of his position with or without a reasonable accommodation.

Additionally, plaintiff could not regularly attend work.  Excessive absenteeism is a factor in considering whether a person is a qualified individual under the ADA; and, extensive absenteeism can render a person unqualified to perform a position. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) ("It is a rather common sense idea that if one is not able to be at work, one cannot be a qualified individual.") (internal citations, quotations, and alterations omitted) (collecting circuit cases holding that regular attendance is an essential job function).

Beginning in September 2008, plaintiff rarely and sporadically attended work.  Each day plaintiff was to return to work in 2009, he went back to the doctor and was excused from attending work due to his disabilities.  Plaintiff could not perform the essential functions of his job because he could not regularly attend work to perform those essential functions.

When an employee cannot perform the essential functions of the job, as in this situation, there can be no genuine issue of material fact. *See Kaplan v. City of North Las Vegas*, 523 F.3d 1226, 1230-31 (9th Cir. 2003).

            ii.     Reasonable Accommodations

In addition to not being able to perform the essential functions of his position, plaintiff (1) did not engage in an interactive process to identify potential reasonable accommodations and (2) has not identified any reasonable accommodations that defendant could have provided.

"Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Mem'l Hosp. Ass'n,* 239 F.3d 1128, 1137 (9th Cir. 2001). "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Id.* "Where the disability, resulting limitations, and necessary reasonable accommodations, are not open, obvious, and apparent to the employer, as is often the case when mental disabilities are involved, the initial burden rests primarily upon the employee, or his health-care provider, to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996).

Dr. Collins proposed vague and unreasonable job modifications to accommodate plaintiff's severe depression and anxiety. Dr. Collins proposed that defendant provide plaintiff with a mentor and group counseling permanently, and provide plaintiff with a life coach. None of those job modifications could have assisted plaintiff in performing the essential functions of his position since he could not attend work when experiencing a panic attack. Dr. Collins' proposed reasonable accommodations did not return plaintiff to the workplace and each of his reports stated that plaintiff was required to take additional time off of work. Dr. Racoma's suggested accommodation was that if plaintiff were to have a panic attack, the only remedy would be to stop working completely.

By the time plaintiff provided the "reasonable accommodations" to defendant, plaintiff had already missed most of a year of work. The reasonable accommodations did not guarantee or provide any indication that plaintiff could work for sustained periods of time–"sustained" meaning either days or weeks at a time or even hours within a single work day. The reasonable accommodations sought by plaintiff were not reasonable at all.

There was no other reasonable alternative accommodations to provide to plaintiff because he had already exhausted all available FMLA and medical leave and he did not fully participate in the interactive process to locate a different position with defendant. When defendant instructed

1   plaintiff to contact human resources so that he may possibly identify a different position with

2   defendant, plaintiff ignored the request.

3       The court finds that there is no genuine issue of material fact on the ADA claims and grants

4   summary judgment in favor of defendant Clark County on the ADA claims.

5       *B.      State Law Claims*

6       The remaining claims are all state tort claims: negligent supervision; intentional infliction

7   of emotional distress; and wrongful termination.  This court has the discretion to decline to hear the

8   supplemental state law claims once it has dismissed all federal claims.  *San Pedro Hotel Co., Inc v.*

9   *City of Los Angeles*, 159 F.3d 470, 478 (9th Cir.1998); 28 U.S.C. § 1367(c) (stating that a "district

10  court[ ] may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which

11  it has original jurisdiction.").  "In the usual case in which all federal-law claims are eliminated before

12  trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining

13  state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (ellipses omitted)

14  (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).

15      When considering whether to exercise supplemental jurisdiction, a federal court "should

16  consider and weigh in each case, and at every stage of the litigation, the values of judicial economy,

17  convenience, fairness, and comity." *Carnegie-Mellon*, 484 U.S. at 350.  "When the balance of these

18  factors indicates that a case properly belongs in state court, as when the federal-law claims have

19  dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court

20  should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.*

21      The defendant, a state entity, removed this action from state to federal court.  It now argues

22  this court should decline to exercise supplemental jurisdiction.  Plaintiff likewise states that if the

23  ADA claims do not survive summary judgment then "the Court should decline pendent jurisdiction

24  over the [state law] claims." (Doc. # 31; 28:12-13).  After considering the *Carnegie-Mellon* factors

25  and the parties' contentions, the court declines to exercise supplemental jurisdiction.  All of

26  plaintiff's remaining claims are state law tort claims.  The issue of whether the state of Nevada has

27  waived sovereign immunity on the remaining tort law claims are best resolved by Nevada state

28

**James C. Mahan**
**U.S. District Judge**

- 10 -

1   courts interpreting Nevada common law.  This case shall be remanded back to state court.

2           Accordingly,

3           IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant Clark County's

4   motion for summary judgment (doc. # 34) be, and the same hereby, is GRANTED with respect to

5   the ADA claim.

6           IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that plaintiff Randal Lane's

7   motion to amend/correct response to motion (doc. # 38) be, and the same hereby, is GRANTED.

8           IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the case is remanded

9   back to state court for resolution of the remaining state law claims.

10          DATED February 13, 2013.

11

12   _____
    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

James C. Mahan
U.S. District Judge